# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-2310V

|  |  |
|---|---|
| JOEY DYLLA, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: February 27, 2024 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for Petitioner.*

*Mallori Browne Openchowski, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On December 20, 2021, Joey Dylla filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered Guillain-Barré syndrome ("GBS"), a defined Table injury, after receiving an influenza ("flu") vaccine on September 19, 2019. Petition at 1 n.2, ¶¶ 2, 26. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Almost ten months after Petitioner was determined to be entitled to compensation, the parties informed me that they had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Sept. 11, 2023, ECF No. 55.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount $**170,000.00 for pain and suffering, plus $21,480.00 for the costs of renovations to her home.** The parties have agreed Petitioner is also entitled to **$7,506.81 for past unreimbursed expenses, and $1,408.50 for the cost of her future medication.**

## I.       Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my

2

predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

## II.    The Parties' Arguments

The parties agree that Petitioner is entitled to $7,506.81 for past unreimbursed medical expenses, and $1,408.50 as a lump sum to cover the out-of-pocket cost of future medication (Gabapentin). Petitioner's Memorandum in Support of Damages ("Pet. Brief"), filed Oct. 26, 2023, at 20-22, ECF No. 58. Petitioner also seeks $21,480.00 to cover the cost of renovating a half-bath to include a walk-in shower, as recommended by her neurologists, and $180,000.00 for past and future pain and suffering. *Id.* at 22-24, 40; *see* Exhibit 43, filed Oct. 26, 2023, ECF No. 56-3 (estimates for and pictures of these renovations). Although she maintains that she retired earlier than expected from her job - as a financial advisor and outside salesman for a credit union - due to her GBS illness, Petitioner does not seek any lost wages award. Pet. Brief at 24-25. Instead, she accounts for her forced early retirement in the pain and suffering award she seeks. *Id.* at 29-31.

In addition to her inability to continue working in a job she loved, Petitioner bases the pain and suffering award she proposes upon the three trips to the emergency room ("ER") it took for her to obtain a final/accurate GBS diagnosis, her hospitalization followed by inpatient and outpatient therapy, her continued need for Gabapentin and Tramadol to control her pain, and her ongoing sequelae which included facial diplegia[5] and lower extremity sensory loss. Pet. Brief at 27-29, 32-35. As comparable cases, she cites *Gruba, Enstrom, Merchant, Devlin,* and *Fedewa*[6] – cases involving past pain and suffering awards ranging from $165,000.00 to $180,000.00. Brief at 36-40.

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] Facial diplegia is "paralysis affecting both sides of the face." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S ") at 524 (32nd ed. 2012).

[6] *Gruba v. Sec'y of Health & Hum. Servs.,* No. 19-1157V, 2021 WL 1925630 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $165,000.00 for actual pain and suffering); *Enstrom v. Sec'y of Health & Hum. Servs.*, No. 20-2020V, 2023 WL 345657 (Fed. Cl. Spec. Mstr. Dec. 16, 2022) (awarding $170,000.00 for actual pain and suffering); *Merchant v. Sec'y of Health & Hum. Servs.,* No. 20-0450V, 2022 WL 17819548 (Fed. Cl. Spec. Mstr. Nov. 7, 2022) (awarding $170,000.00 for actual pain and suffering); *Devlin v. Sec'y of Health & Hum. Servs.,* 19-0191V, 2020 WL 5512505 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $180,000.00 for actual pain and suffering); *Fedewa v. Sec'y of Health & Hum. Servs.*, No. 17-1808V, 202 WL1915138 (Fed. Cl. Spec. Mstr. March 26, 2020) (awarding $180,000.00 for actual pain and suffering).

Emphasizing the shorter durations of Petitioner's hospitalizations and inpatient rehabilitation, her single course of IVIG therapy (albeit involving seven treatments), the fact that most treatment occurred within the initial two months, and the limited treatment required thereafter (only twice-yearly neurologic appointments), Respondent counters that Petitioner should receive $120,000.00 for pain and suffering. He maintains that Petitioner's circumstances were less severe than the cases she cites. *Id.* at 9-10. And Respondent argues I should rely on past proffered pain and suffering amounts when assessing the appropriate amount in this case.

Regarding the disputed portion of the future expenses, Respondent insists Petitioner should receive a more modest amount ($5,174.78), to cover the costs of installing a walk-in shower, three grab bars, a raised toilet seat, a shower chair, and a non-slip bathmat. *Id.* at 11-12; *see* ECF No. 62-1 (report from a life care planner employed by Respondent). Characterizing Petitioner's proposed renovations as "extensive" (Res. Brief at 11), Respondent argues that all are not reasonably necessary for the purposes listed in Section 15(a)(1)(A)(iii). Res. Brief at 10-12.

On reply, Petitioner criticizes Respondent's failure to cite any past substantive damages decisions to support the pain and suffering amount he proposes, arguing that it "leaves his proposal unsupported and unpersuasive." Petitioner's Reply to Res. Brief ("Pet. Reply"), filed Jan. 24, 2024, at 3, ECF No. 64. In addition to reiterating her previous arguments and cited caselaw, Petitioner cites another, more recent comparable case, *Longo*[7] – involving an award of $160,000.00 - contending that her award should be greater. Pet. Reply at 4-5.

### III.   Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole, including the medical records, affidavits, and all assertions made by the parties in written documents. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[8] However, I ultimately base my

---

[7] *Longo v. Sec'y of Health & Hum. Servs.*, No. 21-844V, 2023 WL 9326039 (Fed. Cl. Chief Spec. Mstr. Dec. 20, 2023) (awarding $160,000.00 for actual pain and suffering).

[8] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2024 reveals the median amount awarded to be $171,133.72. The awards in these cases - totaling 364, have typically ranged from $128,645.56 to $256,835.75, representing cases between the first and third

determination on the circumstances of this case.

The evidence shows that Petitioner – age 64 when vaccinated - suffered a moderate GBS illness, involving common symptoms such as weakness, tingling, and neurologic pain in her extremities, but also facial weakness, migraine pain, and urinary incontinence. *E.g.,* Exhibit 9 at 709, 1024-1026, 1534, 1537-1538 (describing placement of Foley catheter). Initially prescribed a five-day course of IVIG therapy, Petitioner required two additional days of treatment. *Id.* at 1568. Although she obtained some improvement, Petitioner continued to require medication, including Gabapentin, to control her pain. *See,* e.g.*,* Exhibit 7 at 16-17. Following two hospitalizations in October 2019, for four and eight days, respectively, Petitioner spent seven days in an inpatient rehabilitation facility. Exhibit 9 at 2096, 2508-2513. She continued to use a walker but was able to have her Foley catheter removed. *Id.* at 2096. From late October through December 2019, Petitioner attended 19 PT sessions. Exhibit 6. Additionally, at the beginning of 2020, Petitioner was forced to quit her job. Exhibit 30 at ¶¶ 1, 6 (Petitioner's affidavit); Exhibit 41 at 29 (letter resignation letter with January 3, 2020 termination date).

Thereafter through 2022, Petitioner continued to report eye problems, facial weakness, neuropathic pain in her feet, back pain, migraines, general weakness, and fatigue. Exhibit 7 at 9, 12-13; Exhibit 10 at 13-14; Exhibit 15 at 26-30; Exhibit 36 at 18-19, 22-23; Exhibit 37 at 19-24; Exhibit 38 at 9; Exhibit 40 at 14-15; Exhibit 42 at 6-7. She required Gabapentin throughout the day to control her neurologic pain. *E.g.,* Exhibit 40 at 15. On October 18, 2021, her neurologist noted that Petitioner "has probably reached maximum medical improvement." Exhibit 6 at 22. In 2022 and 2023, two different neurologists opined that Petitioner would require a walk-in shower, handrails and non-slip bathmat. Exhibit 36 at 18-19; Exhibit 42 at 6-7.

Considering Petitioner's ongoing sequelae, the amount proposed by Respondent ($120,000.00) is generally reasonable but low. As I have explained previously during expedited "Motions Day" hearings, GBS pain and suffering awards should be higher than in matters involving a less frightening and physically-alarming injury, such as SIRVA. And as noted by Petitioner, I have routinely rejected Respondent's contention that proffered amounts offer better guidance than reasoned decisions by a judicial neutral. *Sakovits v. Sec'y of Health & Hum. Servs.,* No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec.

---

quartiles and awards comprised of all categories of compensation – including lost wages. 47 cases include the creation of an annuity to provide for future expenses.

Past pain and suffering amounts awarded in substantive decisions issued in 34 SPU GBS cases range from $92,500.00 to $192,500.00, with an additional case involving annuity payments. The median amount past pain and suffering award in these 35 cases was $165,000.00, with awards falling within the first and third quartiles ranging from $155,000.00 to $180,000.00.

Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

Although all cases cited by Petitioner offer good comparisons to the circumstances she experienced, I find *Enstrom* and *Merchant* are most similar to Petitioner's facts and circumstances. Both involved relatively short hospitalizations, IVIG therapy, similar inpatient and/or outpatient therapy, and symptoms which continued for years. *Enstrom,* 2023 WL 345657, at *2-6; *Merchant,* 2022 WL 17819548, at *2-3. The *Enstrom* petitioner was also forced to retire early and continued to require medication to control his pain. *Enstrom,* 2023 WL 345657, at *4-5. And the *Merchant* petitioner continued to suffer from urinary incontinence. *Merchant,* 2022 WL 17819548, at *3. Although not as obvious as Petitioner's continued facial weakness, this ongoing condition no doubt caused the *Merchant* petitioner continued suffering. Given these similarities, I find that Petitioner should be awarded the same amount as these two petitioners - $170,000.00 for her pain and suffering.

## IV.      Appropriate Compensation for Petitioner's Unreimbursed Expenses

Petitioner is also entitled to the renovation costs she seeks. Although the costs Respondent disputes, such as a customized closet, would usually not be compensated, they are necessary in this case.

The photographs submitted by Petitioner clearly shows that the easier, and therefore cheapest, means of providing her with the needed walk-in shower is to add it to the bathroom which currently does not contain a shower or tub. *See* Exhibit 43. Due to the position of her current traditional tub and shower, the addition of a walk-in shower would undoubtedly require the repositioning of the toilet, adding further expense (*see id.* at 6), and the custom closet is required only because the addition of the walk-in shower will encompass most of the current closet space (*see id.* at 1).

Although Respondent provides reasonable estimates for the additional equipment Petitioner requires, he neglects to consider some installation costs. For example, the space required for the walk-in shower and resulting mandated changes to the current closet. *See* Exhibit 43 at 1. Thus, I find Petitioner is entitled to the full costs of the needed renovations, as stated in the lower of the two estimates she obtained. *Compare id.* at 1 *with id.* at 2.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $170,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.[9]    Additionally, Petitioner is entitle to the full renovations costs she seeks, $21,480.00, as well as the past and future expenses agreed upon by the parties.**

**I therefore award Petitioner a lump sum payment of $200,395.31, representing compensation in the amounts of $170,000.00 for pain and suffering, $7,506.81 for actual unreimbursable expenses, and $22,888.50 for projected unreimbursable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[10]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.